**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------x

**YSMARIE RIVERA,** on behalf of herself and all others similarly situated,

Plaintiff,

**-v.-**

**BOP LLC d/b/a Shopbop,**

Defendant.

---------------------------------------------------------------x

**CLASS ACTION COMPLAINT & DEMAND FOR JURY TRIAL**

Plaintiff**, YSMARIE RIVERA** ("Plaintiff" or "Ms. Rivera,") individually and on behalf of herself and all others similarly situated (collectively, "Plaintiffs"), by and through her undersigned counsel, **Robert Schonfeld, Esq.** of JOSEPH & NORINSBERG, LLC, brings this action against Defendant, BOP LLC d/b/a Shopbop ("Shopbop" or "Defendant"), for violations of Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12181 *et seq*., arising from Defendant's failure to ensure that its ecommerce Website, is accessible to blind and visually impaired individuals.

## INTRODUCTION

1. Plaintiff, **Ysmarie Rivera**, is a resident of Bronx County and is permanently disabled due to legal blindness. Ms. Rivera suffers from **complete blindness in both eyes with no light perception**, as certified by her examining ophthalmologist, **Dr. Vinayak Mishra**, on the New York State Office of Children and Family Services **Report of Legal Blindness**, dated **September 10, 2025**. Dr. Mishra checked the box for "**Blindness in both eyes; no light perception**" and identified **Diabetic Retinopathy** as the underlying cause. This diagnosis meets the criteria for legal blindness under both State and Federal standards and entitles her to all privileges and accommodations afforded to individuals who are legally blind. Exhibit A

2. Ms. Rivera is a proficient user of screen reading technology, including JAWS and NVDA, and relies exclusively on keyboard navigation to access digital environments independently. Because she cannot visually perceive website content, she depends on websites to provide proper semantic structure, meaningful alternative text, labeled interactive controls, and programmatically determinable navigation. For blind consumers such as Ms. Rivera, screen reading software is not optional; it is the only means by which they can independently access the internet.

3. **For Ms. Rivera, the apparel she sought on Shopbop is directly tied to her ability to move safely and confidently as a totally blind parent in the Bronx.** Because she has *no light perception at all*, she cannot visually detect curbs, potholes, puddles, uneven pavements, or approaching pedestrians. She relies heavily on tactile feedback from her clothing and footwear to understand her environment. Items such as the **LE BOP Farrah Terry Shorts**, **Madewell Pull-On Shorts**, and the **LE BOP Simone Skort** are designed with soft, flexible fabrics, wide waistbands, and non-restrictive fits that allow her to feel temperature changes, body positioning, and movement cues through touch. These garments help her maintain balance, avoid tripping hazards, and move comfortably while navigating crowded sidewalks, playgrounds, and public transit with her child. Because she cannot visually inspect clothing in stores, and because many of Shopbop's sizes and styles are online-exclusive, the website is the only practical way for her to obtain apparel that supports her daily mobility and safety.

4. Millions of Americans live with significant visual impairments, including more than two million who are legally blind. In New York alone, hundreds of thousands of residents are blind or visually impaired. Congress enacted the Americans with Disabilities Act to eliminate discrimination against individuals with disabilities and to ensure full integration, independent living, and equal opportunity. These protections extend to digital spaces. The Department of Justice has repeatedly affirmed that the ADA applies to the goods, services, privileges, and activities offered

by public accommodations on the web.

5. The internet has become indispensable for modern life. It is a primary means of shopping, banking, learning, communicating, and accessing essential goods and services. For blind and visually impaired individuals, equal access to websites is critical to participating in society on equal terms. When websites are not designed to be compatible with screen reading software, blind users are excluded from the digital marketplace and denied the independence that sighted users take for granted.

6. Screen reading software works by converting digital content into synthesized speech or refreshable Braille. For this technology to function, website content must be capable of being rendered into text. Websites that lack alternative text for images, contain unlabeled buttons or links, use improper heading structure, rely on mouse-only interactions, or contain broken ARIA references cannot be interpreted by screen readers. As a result, blind users cannot navigate, understand, or interact with such websites and are denied equal access to the goods and services offered.

7. The World Wide Web Consortium (W3C) has published the Web Content Accessibility Guidelines (WCAG 2.1), which are widely recognized as the industry standard for accessible website design. These guidelines are followed by major corporations, government agencies, and public institutions to ensure that digital content is accessible to blind and visually impaired users. Compliance with WCAG 2.1 is readily achievable and necessary to provide equal access under the ADA.

8. Plaintiff brings this civil action against **BOP LLC d/b/a Shopbop** for its failure to design, construct, maintain, and operate its highly interactive website, **www.shopbop.com**, in a manner that is fully accessible to and independently usable by blind and visually impaired individuals. Defendant's denial of full and equal access to its website—and therefore to the goods and services offered therein—constitutes a violation of Plaintiff's rights under Title III of the

Americans with Disabilities Act, 42 U.S.C. § 12181 et seq.

9. On **three separate occasions—June 13, 2026; August 19, 2026; and August 21, 2026**—Plaintiff attempted to access Defendant's website using screen reader technology in order to research and purchase several Shopbop products, including: • **LE BOP Farrah Terry Shorts**, • **Madewell Pull-On Shorts**, and • **LE BOP Simone Skort**. These products were selected because they are specifically marketed for comfort, mobility, and everyday wear—needs that are uniquely important to Ms. Rivera as a legally blind parent. Her shopping objectives were concrete, personal, and time-sensitive: she intended to review product descriptions, sizing information, usage details, pricing, and related purchase options before completing a transaction.

10. SortSite automated audits conducted on June 13, 2026, and August 19, 2026, revealed thousands of accessibility violations across Defendant's website, including **Missing Fieldset Labels**, **Placeholder Alt Text**, **ARIA-Hidden Focusable Content**, **Missing Roles**, **CSS-Inserted Content**, **Missing Document Titles**, **Empty Links**, and **Broken Account Navigation Links**. These barriers were found on more than **3,200 pages**, confirming that Defendant's website is not coded in a manner compatible with screen reader technology. Exhibit B

11. Defendant operates a retail ecommerce platform through which consumers can browse apparel, review product-specific information, and purchase items directly online. Plaintiff specifically sought out Defendant because of its specialized apparel offerings, including LE BOP and Madewell products—items uniquely suited to the needs of blind parents who rely heavily on tactile cues, comfort, and durable everyday wear. As a legally blind consumer, Plaintiff relies on accessible digital interfaces and descriptive labeling to make informed purchasing decisions. Defendant's failure to provide an accessible website denied her equal access to the goods and services it provides to nondisabled customers.

12. Defendant operates a retail ecommerce platform through which consumers must rely

on product-specific information to make informed choices about apparel. For Ms. Rivera, this information is not merely about style, it is about safety. Because she cannot see the garments, she depends entirely on accessible digital interfaces to understand whether a waistband is adjustable, whether a fabric stretches enough to allow full leg movement, or whether a garment's cut will restrict her stride while navigating curbs, stairs, and crowded sidewalks. These tactile and mobility-related features are essential to her ability to travel independently with her child. Defendant's failure to provide an accessible website denied her the ability to evaluate and purchase clothing that is critical to her safe daily functioning, even though the same information is readily available to sighted customers.

**JURISDICTION & VENUE**

13. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because Plaintiff's claims arise under the laws of the United States, including Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 *et seq*.

14. This Court has supplemental jurisdiction over Plaintiff's related state and local law claims pursuant to 28 U.S.C. § 1367 because those claims form part of the same case or controversy as Plaintiff's federal ADA claims.

15. Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391(b)(2) because Plaintiff resides in New York County which is within this District, and accessed Defendant's website from within this District, and experienced the discriminatory barriers alleged herein in this District. Courts in this Circuit have repeatedly held that venue is proper where the plaintiff experiences the discriminatory denial of access to a website. See, *Velazquez v. Don Roberto Jewelers, Inc.*, No. 1:22-cv-05049 (S.D.N.Y. 2023) (Ramos, J.) (venue proper where plaintiff encountered website barriers in the district); see also *Romero v. 88 Acres Foods, Inc.,* 2022 U.S. Dist. LEXIS 9040 (S.D.N.Y. Jan. 18, 2022).

16. Defendant is subject to personal jurisdiction in this District because it purposefully directs business activities toward New York consumers through its highly interactive ecommerce website, www.shopbop.com which allows users to browse inventory, review product information, create accounts, and complete purchases. Defendant ships products directly to New York residents and derives substantial revenue from sales to consumers in this State. Courts in this Circuit have consistently held that operators of nationwide ecommerce websites are subject to personal jurisdiction in New York when they purposefully avail themselves of the privilege of conducting business here. See *Andrews v. Blick Art Materials, LLC*, 286 F. Supp. 3d 365 (E.D.N.Y. 2017); *Reed v. 1-800-Flowers.com, Inc.,* 327 F. Supp. 3d 539 (E.D.N.Y. 2018).

17. The United States Department of Justice has repeatedly confirmed that the ADA applies to the goods, services, privileges, and activities offered by public accommodations on the web. The DOJ's Guidance on Web Accessibility and the ADA states that the ADA's requirements apply to all services offered by public accommodations, including those offered online

18. This Court is empowered to issue declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201 and 2202.

## THE PARTIES

19. **Plaintiff Ysmarie Rivera is, and at all relevant times was, a resident of Bronx County, New York.** Ms. Rivera is legally blind and a member of the protected class of individuals under the Americans with Disabilities Act, 42 U.S.C. § 12102(1)–(2), its implementing regulations at 28 C.F.R. §§ 36.101 et seq., and the protections afforded under New York State and New York City law. As confirmed by her examining ophthalmologist, **Dr. Vinayak Mishra**, on the New York State Office of Children and Family Services **Report of Legal Blindness** dated **September 10, 2025**, Ms. Rivera suffers from **complete blindness in both eyes with no light perception**, caused by **Diabetic Retinopathy**, a permanent condition that meets the criteria for legal blindness under

State and Federal standards and requires the use of screen-reading software to access digital content independently.

20. **Plaintiff is a proficient user of screen-reader technology, including NVDA and JAWS, and relies on keyboard navigation and accessible coding to browse, understand, and interact with websites.** Because she cannot visually interpret printed or digital information without assistive technology, Ms. Rivera depends on businesses to design, construct, and maintain their websites in a manner that is compatible with screen-reading software. Proper semantic structure, meaningful alternative text, labeled interactive controls, and programmatically determinable navigation are essential for her to access digital content independently.

21. **For Ms. Rivera, the apparel sold on Defendant's website is not merely fashion—it is essential to her daily mobility, safety, and independence as a totally blind parent.** Because she has no light perception, she cannot visually detect curbs, steps, uneven pavement, or approaching pedestrians. She relies heavily on tactile feedback from clothing to maintain balance, orientation, and safe movement while navigating crowded sidewalks, playgrounds, and public transit with her child. Products such as the **LE BOP Farrah Terry Shorts**, **Madewell Pull-On Shorts**, and the **LE BOP Simone Skort**—all sold exclusively online through Shopbop—are particularly important because their soft-stretch fabrics, flexible waistbands, and non-restrictive fits provide the tactile reliability, comfort, and freedom of movement she needs to travel safely in urban environments. These items are uniquely suited to her needs as a blind consumer who depends on high-quality apparel for mobility, orientation, and family safety.

22. **Upon information and belief, Defendant BOP LLC d/b/a Shopbop is a limited liability company organized under the laws of the State of Delaware, with its principal place of business located at 1245 East Washington Avenue, Suite 300, Madison, Wisconsin 53703.** Defendant owns, operates, and controls the commercial website **www.shopbop.com**, through which

it markets, displays, and sells apparel, footwear, accessories, and related products to consumers throughout the United States, including residents of New York. Defendant is a wholly-owned subsidiary of Amazon.com, Inc., and is responsible for the design, construction, maintenance, and operation of the Website and its digital content.

## STATEMENT OF FACTS

### Plaintiff's Attempts to Access the Apparel Product Pages

23. Between **June 13, 2026**, and **August 21, 2026**, Plaintiff **Ysmarie Rivera** attempted on three separate occasions to access Defendant's website, **www.shopbop.com**, using the NVDA screen reader on her home computer in the Bronx. On June 13, 2026, Plaintiff navigated to the **LE BOP Farrah Terry Shorts** product page located at: https://www.shopbop.com/le-bop-farrah-terry-shorts/vp/v=1/ (shopbop.com in Bing) Plaintiff visited this page for the specific purpose of browsing Shopbop's apparel offerings, comparing models, and identifying garments that would meet her unique needs as a totally blind parent who relies heavily on tactile feedback, flexible fabrics, and non-restrictive clothing for safe mobility in crowded urban environments.

24. Plaintiff sought to review the list of available apparel items, including the **LE BOP Farrah Terry Shorts**, **Madewell Pull-On Shorts**, and the **LE BOP Simone Skort**. She intended to review product names, descriptions, pricing, fabric types, stretch levels, waistband structure, and seasonal suitability. She also sought to understand differences between color options, sizing availability, and intended use categories such as "Everyday," "Casual," and "Active."

25. During this visit, Plaintiff encountered multiple barriers that prevented her from independently evaluating the product page. The **WAVE report for the LE BOP Farrah Terry Shorts page identified 71 Errors**, including **Missing form label**, **Empty form label**, **Multiple form labels**, **Empty button**, **4 Broken ARIA references**, **24 Redundant alternative text errors**, and **11 Very low contrast errors**, along with **78 Alerts**. These technical failures manifested in

concrete ways for Plaintiff:

Many product images and promotional graphics were announced only as "image" or "graphic" with no meaningful alternative text, depriving Plaintiff of information about product appearance, color options, and distinguishing features.

Size selectors, color selectors, and quantity controls were coded with ARIA attributes such as aria-controls and aria-label, but WAVE flagged **Missing form label**, **Orphaned form label**, and **Broken ARIA reference** for these elements. As a result, NVDA announced these controls inconsistently or not at all, making it impossible for Plaintiff to understand how to select a size or color.

The page contained **11 contrast errors**, indicating that the site's visual design was not built with accessibility in mind and contributing to inconsistent focus indicators.

NVDA announced headings such as "LE BOP Farrah Terry Shorts," but intervening product cards, promotional modules, and dynamic regions were presented as a confusing sequence of unlabeled links, repeated "Reviews" links, and partially announced text.

Because of these barriers, Plaintiff could not reliably navigate the product page, understand how many options were available, or determine which items might be suitable for her need

**Plaintiff's Attempt to Access the Madewell Pull-On Shorts Product Page**

26. On **August 19, 2026**, Plaintiff returned to Defendant's website to research the **Madewell Pull-On Shorts** product page. Plaintiff was particularly interested in this item because its soft-stretch fabric and flexible waistband provide tactile reliability and unrestricted movement—features that help her maintain balance and orientation while navigating sidewalks, curbs, subway stairs, and playgrounds with her child.

27. Plaintiff sought to review the product description, fabric type, stretch level, sizing information, color availability, and pricing. She also wanted to confirm whether the shorts were

available in multiple colors and whether they were designed for everyday wear, active movement, or warm-weather use.

28. During this visit, Plaintiff encountered pervasive accessibility barriers that prevented her from independently evaluating the Madewell Pull-On Shorts. The WAVE report for this page identified **71 Errors**, including **Missing form label**, **Empty link**, **Empty button**, **Multiple form labels**, and **Broken ARIA reference**, as well as **11 Very low contrast errors** and **78 Alerts**. Exhibit C

These technical issues translated into specific functional barriers:

• Key product images lacked alternative text. NVDA announced these elements only as “image,” providing no information about the garment’s design, fit, or included features.

• Color selectors and size selectors were coded with ARIA attributes, but WAVE simultaneously reported **Missing form label** and **Orphaned form label** issues. As a result, some controls were announced clearly while others were announced only as “button” or “link,” making it difficult for Plaintiff to understand how to change options.

• The “Add to Cart” button and shipping information were embedded in dynamic regions flagged with ARIA issues. NVDA would announce shipping estimates out of context, causing confusion and making it difficult to locate the primary purchase controls.

• The page contained multiple headings and promotional modules, but WAVE reported skipped heading levels and numerous ARIA role="presentation" elements, indicating inconsistent structure. NVDA would jump unpredictably between sections, making it hard for Plaintiff to follow the logical flow of information.

Because of these barriers, Plaintiff was unable to determine critical information about the Madewell Pull-On Shorts, including how they fit, how they are controlled, and whether they would safely support her need for flexible, tactile clothing. She could not confidently identify or activate the “Add to Cart” button and was unable to complete a purchase.

**Plaintiff’s Attempt to Access the LE BOP Simone Skort Product Page**

29. On **August 21, 2026**, Plaintiff made a third attempt to use Defendant’s website, this time to research the **LE BOP Simone Skort** product page. Plaintiff was interested in this product

because its stretch fabric and secure waistband provide tactile stability and unrestricted movement—features essential for her safe mobility as a totally blind parent.

30. Plaintiff sought to review the product description, fabric type, stretch level, sizing options, color availability, and pricing. She also wanted to understand the differences between the Simone Skort and other LE BOP garments offered by Shopbop.

31. The WAVE report for the Simone Skort page identified **71 Errors**, including **Missing form label**, **Empty link**, **Multiple form labels**, **Empty button**, and **Broken ARIA reference**, along with **11 Very low contrast errors** and **78 Alerts**. These issues created concrete barriers for Plaintiff:

• Product images lacked meaningful alternative text. NVDA announced these elements in ways that provided no useful information about the garment's design, fit, or included features.

• Color selectors and size selectors used ARIA attributes, but WAVE simultaneously reported **Missing form label** and **Orphaned form label** issues, making the control structure confusing.

• The "Add to Cart" button and associated purchase information were embedded in dynamic regions with ARIA role="status" and repeated shipping messages. NVDA would announce controls without clear labels, making it difficult for Plaintiff to identify the primary purchase action.

• The "Reviews" section contained interactive controls flagged with ARIA issues, causing NVDA's focus to jump unpredictably between review controls, share buttons, and rating summaries.

Because of these barriers, Plaintiff was unable to determine whether the Simone Skort would meet her needs for tactile reliability, comfort, and safe mobility. She could not reliably identify or activate the "Add to Cart" button, could not confirm shipping and pricing details, and was again unable to complete a purchase.

**Systemic Barriers confirmed by Sort Site Reports**

32. The SortSite accessibility validation reports for **https://www.shopbop.com** confirmed that the barriers Plaintiff encountered were systemic across the Website. The reports identified issues at Level A, Level AA, and Level AAA, including **missing alternative text**, **improper heading structure**, **unlabeled links**, **broken ARIA references**, **insufficient color contrast**, **missing roles**, **CSS-inserted content**, **empty links**, and **focus outline problems**.

33. The combination of missing alternative text, unlabeled and orphaned form controls, broken ARIA references, improper heading structure, contrast failures, and redundant or generic links prevents blind users from perceiving, navigating, and interacting with the Website on equal terms with sighted users.

34. Because Shopbop's apparel offerings are particularly important to blind users—who rely on tactile reliability, flexible fabrics, and non-restrictive clothing for safe navigation—the impact of these barriers on Plaintiff is especially severe. Defendant's inaccessible Website resulted in the loss of the opportunity for Plaintiff to purchase the specific products she sought at the time she sought them and continues to deter her from attempting to use the Website until it is remediated.

35. Plaintiff remains highly interested in purchasing Shopbop's apparel and intends to return to the Website as soon as it is made accessible. Plaintiff's intent to return is concrete and credible because:

(a) she continues to require flexible, tactile clothing to support her daily life as a blind parent;

(b) Shopbop's products, including LE BOP and Madewell garments, are uniquely marketed and not all are widely available in physical stores;

(c) she has no alternative means of independently evaluating or purchasing these specific products without an accessible Website; and

(d) she has demonstrated a history of attempting to access the Website for the purpose of making a purchase. However, the persistent barriers she encountered deter her from attempting to use the Website again until it is remediated.

36. Defendant's failure to design, construct, maintain, and operate its Website in a manner compatible with screen-reader technology constitutes discrimination under Title III of the ADA. Defendant's inaccessible Website denies blind consumers equal access to the goods and services it offers to the general public and prevents blind users from participating in the digital marketplace on equal terms.

## CLASS ACTION ALLEGATIONS

37. Plaintiff brings this action on behalf of herself, and all others similarly situated pursuant to Rules 23(a) and 23(b)(2) of the Federal Rules of Civil Procedure. Plaintiff seeks certification of a nationwide class consisting of:

38. All legally blind individuals in the United States who have attempted to access https://www.shopbop.com and, as a result of Defendant's failure to design, construct, maintain, and operate the Website in an accessible manner, were denied equal access to the goods, services, and information offered thereon.

39. Plaintiff also seeks certification of a New York subclass consisting of:

> All legally blind individuals residing in the State of New York who have attempted to access https://www.shopbop.com and were denied equal access to the goods, services, and information offered thereon.

40. The members of the Class and Subclass are so numerous that joinder of all members is impracticable. Defendant operates a nationwide ecommerce platform and markets apparel, footwear, accessories, and related products to consumers throughout the United States. Upon information and belief, thousands of blind and visually impaired individuals have attempted to

access https://www.shopbop.com and have been denied equal access due to the systemic accessibility barriers confirmed by SortSite and WAVE audits. Defendant's prior ADA litigation history—including Dennis v. BOP LLC, Klaus v. BOP LLC, and Kolesar v. Everything Kitchens LLC (BOP LLC named as co-defendant)—further demonstrates that Defendant has long been aware of accessibility failures affecting blind consumers nationwide.

41. Common questions of law and fact exist as to all members of the Class and Subclass and predominate over any questions affecting only individual members. These common questions include, but are not limited to:

Whether Defendant's Website contains accessibility barriers that prevent blind individuals from accessing its goods and services;

Whether Defendant's failure to make its Website accessible violates Title III of the ADA;

Whether Defendant's failure to maintain accessible digital content violates New York State and New York City disability rights laws;

Whether Defendant's conduct constitutes ongoing discrimination against blind consumers; and

Whether injunctive relief is warranted to require Defendant to bring its Website into compliance with WCAG 2.1.

42. Plaintiff's claims are typical of the claims of the Class and Subclass because Plaintiff, like all members of the Class, is legally blind, uses screenreading software, and was denied equal access to Defendant's Website due to the same systemic accessibility barriers identified in the SortSite and WAVE reports.

43. Plaintiff will fairly and adequately represent and protect the interests of the Class and Subclass. Plaintiff has retained counsel experienced in ADA litigation, class actions, and digital

accessibility matters.

44. Defendant has acted or refused to act on grounds generally applicable to the Class and Subclass, making final injunctive relief appropriate with respect to the Class as a whole. Defendant continues to operate an inaccessible Website without any policy, plan, or practice to ensure accessibility, thereby subjecting all blind users to the same discriminatory barriers.

45. Certification under Rule 23(b)(2) is appropriate because Defendant has failed to design, construct, maintain, and operate its Website in compliance with WCAG 2.1, and because Defendant's actions apply generally to all blind individuals who attempt to use the Website. Declaratory and injunctive relief is the only appropriate remedy to ensure equal access for Plaintiff and the Class.

**FIRST CAUSE OF ACTION**
**(Violations of the ADA, 42 U.S.C. § 12182 *et seq.)***

46. Plaintiff, **YSMARIE RIVERA.** on behalf of herself and the Class Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

47. Section 302(a) of Title III of the ADA, 42 U.S.C. § 12101 *et seq.,* provides:

> No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.

42 U.S.C. § 12182(a).

48. Defendant's Website, https://www.shopbop.com is a service of a place of public accommodation and a digital gateway through which Defendant offers goods, services, privileges, and advantages to the general public. As such, the Website must be equally accessible to all consumers, including blind and visually impaired individuals who rely on screen-reading technology.

49. Defendant has failed to design, construct, maintain, and operate its website in a

manner that is fully accessible to blind and visually impaired individuals, in violation of Title III of the ADA and its implementing regulations.

50. Defendant's website contains numerous accessibility barriers—including missing alternative text, broken ARIA references, unlabeled buttons, inaccessible pop-ups, improper heading structure, and aria-hidden focusable content—that prevent blind users from perceiving, navigating, and interacting with the website.

51. Under Section 302(b)(1) of Title III of the ADA, it is unlawful discrimination to deny individuals with disabilities the opportunity to participate in or benefit from the products, services, facilities, privileges, advantages, or accommodations of an entity. 42 U.S.C. § 12182(b)(1)(A)(i).

52. Under Section 302(b)(2) of Title III of the ADA, unlawful discrimination also includes, inter alia:

> [A] failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages or accommodations; [and] a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden.

42 U.S.C. § 12182(b)(2)(A)(ii)-(iii).

53. The acts alleged herein constitute violations of Title III of the ADA and the regulations promulgated thereunder. Plaintiff, who is a member of a protected class of persons under the ADA, has a physical disability that substantially limits her major life activity of sight within the meaning of 42 U.S.C. §§ 12102(1)(A)-(2)(A). Furthermore, Plaintiff has been denied full and equal access to the Website, https://www.shopbop.com has not been provided services that are provided to other patrons who are not disabled; and has been provided services that are inferior to the services

provided to non-disabled persons. Defendant has failed to take any prompt and equitable steps to remedy the discriminatory conduct, as the violations are ongoing. Upon information and belief, Defendant has received prior notice of these accessibility anomalies through consumer complaints, automated audit findings, and industry-standard compliance tools. Despite this notice, Defendant has failed to implement WCAG-compliant remediation, demonstrating a pattern of disregard for its obligations under federal law.

54. Under 42 U.S.C. § 12188 and the remedies, procedures, and rights set forth and incorporated therein, Plaintiff requests relief as set forth within the section **Prayer For Relief** below.

## SECOND CAUSE OF ACTION
**(New York State Human Rights Law)**
**("NYSHRL")**

55. Plaintiff, **YSMARIE RIVERA,** on behalf of herself and the Class and New York City Sub-Classes Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

56. At all times relevant to this action, the New York State Human Rights Law ("NYSHRL"), Article 15 of the New York Executive Law §§ 290 *et seq.*, covers the actions of the Defendants.

57. Plaintiff, at all times relevant to this action, as a result of his loss of vision, has a substantial impairment to a major life activity and is an individual with a disability under Article 15 of N.Y. Executive Law § 292(21).

58. Defendants, at all relevant times to this action, own and operate a place of public accommodation, the subject Website, https://www.shopbop.com within the meaning of Article 15 of N.Y. Executive Law § 292(9). Defendant is a "person" within the meaning of Article 15 of N.Y. Executive Law § 292(1).

59. Plaintiff has visited the Website, https://www.shopbop.com on a number of occasions and has encountered barriers to his access that exist.

60. Under Article 15 N.Y. Executive Law § 296(2)(a) “it shall be an unlawful discriminatory practice for any person, being the owner, lessee, proprietor, manager, superintendent, agent or employee of any place of public accommodation ... because of the ... disability of any person, directly or indirectly, to refuse, withhold from or deny to such person any of the accommodations, advantages, facilities or privileges thereof."

61. Discrimination includes the refusal to adopt and implement reasonable modifications in policies, practices, or procedures when they are necessary to afford facilities, privileges, advantages, or accommodations to individuals with disabilities. Article 15 of N.Y. Executive Law § 296(2)(a), § 296(2)(c)(i).

62. Defendant’s actions violate Article 15 of N.Y. Exec. Law § 296(2)(a) by discriminating against the Plaintiff and Subclass by (i) owning and operating a website that is inaccessible to disabled individuals who are sight-impaired and cannot discern the content thereof without the use of a screen-reading program; (ii) by not removing access barriers to its Website in order to make accessibility features of the sites known to disabled individuals who are sight-impaired; and (iii) by refusing to modify the Website when such modifications are necessary to afford facilities, privileges, advantages or accommodations to individuals with disabilities. This inaccessibility denies disabled individuals who are sight-impaired full, and equal access to the facilities, goods, and services that the Defendant makes available to individuals who are not disabled and can see without the need of a screen-reading program or other similar device. Article 15 of N.Y. Exec. Law § 296(2)(c).

63. The Defendant’s discriminatory practice also includes, "a refusal to take such steps as may be necessary to ensure that no individual with a disability is excluded or denied services because

of the absence of auxiliary aids and services, unless such person can demonstrate that taking such steps would fundamentally alter the nature of the facility, privilege, advantage or accommodation being offered or would result in an undue burden." Article 15 of N.Y. Exec. Law

§ 296(2)(c).

64. Established guidelines exist for making websites accessible to disabled individuals. The International Website Standards Organization, the Worldwide Consortium, known throughout the world as "W3C," has published version 2.1 of the Web Content Accessibility Guidelines ("WCAG 2.1"). WCAG 2.1 is well-established guideline for making websites accessible to the blind and visually impaired people. These guidelines are universally followed by most large business entities and government agencies to ensure websites are accessible.

65. Defendant has intentionally and willfully discriminated against the Plaintiff and Subclass and violation of the New York State Human Rights Law, Article 15 of N.Y. Exec. Law § 296(2) and the discrimination continues to date.

66. Absent injunctive relief, Defendant's discrimination will continue against Plaintiff and Subclass, causing irreparable harm.

67. Plaintiff and the Subclass are therefore entitled to compensatory damages, civil penalties, and fines for every discriminatory act in addition to reasonable attorney fees and costs and disbursements of this action. Article 15 of N.Y. Exec. Law §§ 297(9), 297(4)(c) *et seq.*

68. Plaintiff repeats and realleges every allegation contained in the foregoing paragraphs as if fully set forth herein.

69. An actual controversy has arisen and now exists between the parties in that Plaintiff contends, and is informed and believes Defendant denies, that Defendant's website contains access barriers denying blind customers full and equal access to the products, services, and facilities offered

through the website.

70. A judicial declaration is necessary and appropriate at this time so that the parties may know their respective rights and duties and act accordingly.

**THIRD CAUSE OF ACTION**
**(Violation of New York State Civil Rights Law)**
**("NYCRL")**

71. Plaintiff, **YSMARIE RIVERA,** on behalf of herself and the New York City Subclass Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

72. Plaintiff served notice thereof upon the New York State Attorney General, as required by N.Y. Civil Rights Law § 41. (Notice to Attorney General)

73. Persons within New York State are entitled to full and equal accommodations, advantages, facilities, and privileges of places of public accommodations, resort or amusement, subject only to the conditions and limitations established by law and applicable alike to all persons. No person, being the owner of a place of public accommodation, shall directly or indirectly refuse, withhold from, or deny to any person any of the accommodations, advantages, facilities, and privileges thereof. N.Y. Civ. Rights Law § 40.

74. No person because of disability, as defined in § 292(21) of the Executive Law, shall be subjected to any discrimination in his or her civil rights by person or by any firm, corporation, or institution, or by the state or any agency or subdivision. N.Y. Civ. Rights Law ("NYCRL") § 40-c.

75. § 292 of Article 15 of the N.Y. Executive Law deems a disability, a physical, mental, or medical impairment resulting from anatomical, physiological, genetic, or neurological conditions that prevent the exercise of a normal bodily function. As such, the Plaintiff is disabled under the N.Y. Civil Rights Law.

76. Defendant discriminates against the Plaintiff and Subclass under NYCRL § 40 as Defendant's Website, https://www.shopbop.com is a place of public accommodation that does not provide full and equal accommodation, advantages, facilities, and privileges to all persons and discriminates against disabled individuals who are sight impaired.

77. Defendant intentionally and willfully failed to remove the barriers on their Website, discriminating against the Plaintiff and Subclass preventing access in violation of NYCRL § 40.

78. Defendant has failed to take any steps to halt and correct its discriminatory conduct and discriminate against the Plaintiff and the Subclass members.

79. Under N.Y. Civil Rights Law § 41, "a corporation which violates any of the provisions of §§ 40, 40-a, 40-b or 42 shall be liable for a penalty of not less than one hundred dollars nor more than five hundred dollars, to be recovered by the person aggrieved thereby… in any court of competent jurisdiction in the county in which the plaintiff or defendants shall reside." *Id.*..

80. Plaintiff and the SubClass hereby demand compensatory damages of five hundred dollars ($500.00) for the Defendant's acts of discrimination, including civil penalties and fines under N.Y. Civil Law § 40 *et seq.*

**FOURTH CAUSE OF ACTION**
**(Violations of the New York City Human Rights Law)**
**("NYCHRL")**

81. Plaintiff, **YSMARIE RIVERA,** on behalf of herself and the New York City Sub-Class Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

82. N.Y.C. Administrative Code § 8-107(4)(a) provides that "It shall be an unlawful discriminatory practice for any person who is the owner, franchisor, franchisee, lessor, lessee, proprietor, manager, superintendent, agent or employee of any place or provider of public accommodation: [b]ecause of any person's . . . disability . . . directly or indirectly: [t]o refuse,

withhold from or deny to such person the full and equal enjoyment, on equal terms and conditions, of any of the accommodations, advantages, services, facilities or privileges of the place or provider of public accommodation".

83. Defendant is subject to NYCHRL because it owns and operates the Website, https://www.shopbop.com making it a "person" within the meaning of N.Y.C. Admin. Code § 8-102(1).

84. Defendant violates N.Y.C. Administrative Code § 8-107(4)(a) in refusing to update or remove access barriers to Defendant's Website, causing the Website and the services integrated completely inaccessible to the blind. This inaccessibility denies blind patrons full and equal access to the facilities, products, and services that Defendant makes available to the non-disabled public.

85. Defendant is required to "make reasonable accommodation to the needs of persons with disabilities . . . any person prohibited by the provisions of [§ 8-107 *et seq.*] from discriminating based on disability not to provide a reasonable accommodation to enable a person with a disability to satisfy the essential requisites of a job or enjoy the right or rights in question provided that the disability is known or should have been known by the covered entity." N.Y.C. Admin. Code § 8-107(15)(a).

86. Defendant's actions constitute willful intentional discrimination against the Sub-Class based on a disability in violation of the N.Y.C. Administrative Code § 8107(4)(a) and § 8-107(15)(a), in that Defendant has:

a. constructed and maintained a Website that is inaccessible to blind class members with knowledge of the discrimination; and/or

b. constructed and maintained a Website that is sufficiently intuitive and/or obvious that is inaccessible to blind class members; and/or

c. failed to take actions to correct these access barriers in the face of substantial harm and discrimination to blind class members.

87. Defendant has failed to take any prompt and equitable steps to remedy the discriminatory conduct as these violations are ongoing.

88. As such, Defendant discriminates and will continue in the future to discriminate against Plaintiff and other members of the proposed class and subclass based on disability in the full and equal enjoyment of the products, services, facilities, privileges, advantages, accommodations and/or opportunities of the Website under N.Y.C. Administrative Code § 8-107(4)(a). Unless the Court enjoins Defendant from continuing to engage in these unlawful practices, Plaintiff and members of the Class will continue to suffer irreparable harm.

89. Defendant's actions were to violate the NYCHRL, and therefore, Plaintiff invokes the right to injunctive relief to remedy the discrimination.

90. Plaintiff is also entitled to compensatory damages, as well as civil penalties and fines under N.Y.C. Administrative Code § 8-120(8) and § 8-126(a) for each offense as well as punitive damages pursuant to § 8-502.

91. Plaintiff is also entitled to reasonable attorneys' fees and costs.

92. Under N.Y.C. Administrative Code § 8-120 and § 8-126 and the remedies, procedures, and rights set forth and incorporated therein Plaintiff prays for judgment as set forth below.

**FIFTH CAUSE OF ACTION**
**(Declaratory Relief)**

93. Plaintiff, **YSMARIE RIVERA,** on behalf of herself and the Class and New York City Sub-Class Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

94. An actual controversy has arisen and now exists between the parties in that Plaintiff contends, and is informed and believes that Defendant denies, that the Website contains access

barriers denying blind customers the full and equal access to the products, services and facilities of the Website, which Defendant owns, operates and controls, fails to comply with applicable laws including, but not limited to, Title III of the Americans with Disabilities Act, 42 U.S.C. §§ 12182, *et seq.*, and N.Y.C. Admin. Code § 8-107, *et seq.*, prohibiting discrimination against the blind.

95. A judicial declaration is necessary and appropriate at this time so that each of the parties may know its respective rights and duties and act accordingly.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff respectfully requests that this Court grant the following relief:

- A preliminary and permanent injunction prohibiting Defendant from violating Title III of the ADA, 42 U.S.C. § 12182 et seq.;
- A preliminary and permanent injunction requiring Defendant to take all steps necessary to make the website fully accessible to and usable by blind and visually impaired individuals, including through adoption and maintenance of WCAG-conforming accessibility measures;
- A declaration that Defendant owns, maintains, controls, and/or operates its website in a manner that discriminates against blind individuals and fails to provide equal access as required by law;
- An order certifying the proposed Class and New York Subclass under Fed. R. Civ. P. 23, appointing Plaintiff as Class Representative, and appointing her counsel as Class Counsel;
- An award of costs, litigation expenses, and reasonable attorneys' fees to the fullest extent permitted by law; and
- Such other and further relief as the Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff demands a trial by jury on all issues so triable.

Dated: New York, New York
August 19, 2026

Respectfully submitted,
**JOSEPH & NORINSBERG, LLC**

*Robert Schonfeld*
Robert L. Schonfeld, Esq.
*Attorneys for Plaintiff*
825 Third Avenue, Suite 2100
New York, New York 10022
Tel. No.: (212) 227-5700
Fax No.: (212) 656-1889